# SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Complete Waiver/Release Agreement (the "**Agreement**") is made and entered into by and between the following persons and entities (the "**Parties**"): Jane Saunders, her agents, representatives, assignees, heirs, executors, administrators, beneficiaries, and trustees ("**Plaintiff**") and ALLIANCE INSPECTION MANAGEMENT, LLC ("**AIM**").

**WHEREAS**, Plaintiff Jane Saunders instituted a civil action, Case No. 8:13-cv-06844 (SJ)(RLM), on behalf of herself and others similarly situated, against AIM for unpaid wages in the United States District Court for the Eastern District of New York (the "**Court**") on December 5, 2013 (the "**Lawsuit**");

**WHEREAS**, Plaintiff Jane Saunders amended the Lawsuit to proceed only on an individual basis, not representing anyone other than herself, on July 23, 2014;

**WHEREAS**, AIM denies all of the claims and allegations set forth in the Lawsuit and does not admit liability, damages of any kind, or that this matter is properly styled or pursued as a collective action; and

**WHEREAS**, the Parties wish to resolve this matter and avoid the disruption and expense of further litigation; and

**WHEREAS**, the Parties desire, without any concession or admission of unlawful conduct, liability, fault, or wrongdoing by AIM, to effect a full, complete, final, and binding settlement and compromise of all claims that Plaintiffs may have against AIM, whether or not asserted in the Lawsuit, from the beginning of time through the date of entry of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, the Parties agree as follows:

1. **COURT APPROVAL AND DISMISSAL WITH PREJUDICE.**

    1.1.    The Parties agree that this Agreement will be filed with the Court in the Lawsuit for review and approval.

    1.2.    The Parties further agree that they shall file a Joint Motion for Approval and Stipulation of Dismissal with Prejudice.

    1.3.    If, for any reason, the Lawsuit is not dismissed with prejudice or the Court does not approve this Agreement, then this Agreement shall be null and void and the Parties shall be returned, as near as may be, to their positions prior to September 1, 2014.

2. **FINANCIAL TERMS OF AGREEMENT.**

    2.1.    In exchange for the promises made by and in consideration for the terms entered into by Plaintiff in this Agreement, within ten (10) calendar days after the date

that all of the following have occurred: (i) the Court has approved this Agreement and dismissed the Lawsuit with prejudice; (ii) Plaintiff and Plaintiff's counsel have completed, executed, and delivered this Agreement, with their original notarized signatures, to AIM's counsel, Roshni Chaudhari, FORD & HARRISON LLP, 100 Park Avenue, Suite 2500, New York, NY, 10017; and (iii) Plaintiff and Plaintiff's counsel have completed, executed, and delivered IRS Forms W-9 to AIM's counsel, AIM agrees to pay total compromise consideration of $12,000.00 (twelve thousand dollars only) (the "Gross Settlement Amount"). The Gross Settlement Amount shall be payable as follows: $5,500.00 (five thousand five hundred dollars only) for the entire amount of attorneys' fees and costs payable to Treyvus & Konoski, P.C., for which Treyvus & Konoski and Saunders will be issued IRS Form 1099; $3,250.00 (three thousand two hundred fifty dollars only), less applicable taxes and other lawful deductions, payable to Jane Saunders as payment attributable to back wages and reported on an IRS Form W-2; and $3,250.00 (three thousand two hundred fifty dollars only) payable to Jane Saunders as payment attributable to liquidated damages and reported on an IRS Form 1099.

2.2.    Plaintiff agrees and affirms that she is not relying on any representation made by any of the Released Parties (as defined below), concerning whether or not the Gross Settlement Amount or any portion thereof is taxable as wages, as income, or otherwise, or concerning the amount of taxes that they may be required to pay as a result of the payment of the Gross Settlement Amount. Plaintiff agrees that she will not be entitled to any additional consideration under this Agreement as a result of any assessment of, or liability for, taxes as a result of the payment of the Gross Settlement Amount. Plaintiff agrees to pay all taxes she may owe as a result of the payment of the Gross Settlement Amount, and to fully indemnify and hold AIM harmless with respect to any taxes, interest, or penalties related to the payment of the Gross Settlement Amount that are not designated as wages. AIM makes no warranty or representation to Plaintiff or her attorney(s) regarding the tax consequences of these payments.

2.3.    The Parties agree that, except as otherwise provided in Subsection 2.1, the Parties will bear their own attorneys' fees and costs incurred as a result of the Lawsuit and its settlement.

3.    **WAIVER AND RELEASE OF CLAIMS.**

3.1.    Plaintiff fully, finally, forever, irrevocably, and unconditionally, releases and discharges the **"Released Parties"** (as defined in Subsection 3.2), from the **"Released Claims"** (as defined in Subsection 3.3), and waives all claims she has or may have against the Released Parties.

3.2.    When used in this Agreement, "Released Parties" means the following persons and entities, individually, collectively, and in any combination:

3.2.1. Alliance Inspection Management, LLC and all of its past, present and future parents, subsidiaries, affiliates, divisions and related companies;

3.2.2. All of the predecessors, successors and assigns of the entities listed in Subsection 3.2.1;

3.2.3. All of the past, present and future owners, employees, officers, directors, members, accountants, managers, supervisors, agents, shareholders, owners, investors, servants, partners, independent contractors, insurers, benefits plans, plan administrators, third party administrators, fiduciaries, attorneys and representatives of the entities listed in Subsections 3.2.1 and 3.2.2; and

3.2.4. The heirs, assigns, trustees, beneficiaries, executors, administrators, successors, agents and representatives of all entities or persons listed in Subsections 3.2.1, 3.2.2 and 3.2.3.

3.3. The **"Released Claims"** include **all** claims, charges, complaints, actions, causes of action, suits, grievances, controversies, disputes, demands, liabilities, judgments, obligations, debts, damages, attorneys' fees, costs, and other liabilities of any and every kind, nature, description, or character (**"Claims"**) that any Plaintiff ever had, has or may have against any or all of the Released Parties arising out of any fact, condition, circumstance, occurrence or omission whatsoever, from the beginning of the world up to and including the date of this Agreement, whether known or unknown, suspected, unsuspected or concealed, and whether or not presently or previously asserted.

3.3.1. Without in any way limiting the general nature of the foregoing release (it being the intent of the Parties that Plaintiff grant the broadest release allowable by law), the "Released Claims" also include, but are not limited to:

3.3.1.1. All claims that any of the Released Parties failed to properly pay any salary, minimum wage, overtime pay or other compensation due under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., or the Portal to Portal Act, as amended, 29 U.S.C. § 251, et seq. (collectively, the "FLSA") and/or the New York Labor Law, N.Y. Lab. Law § 190 et seq. ("NYLL"),or violated any payroll or wage recordkeeping or itemization requirements of the FLSA or NYLL, or retaliated in violation of the FLSA or NYLL, or violated or failed to comply with any FLSA or NYLL regulation, or in any other way violated the FLSA or NYLL; and

3.3.1.2. All claims that any of the Released Parties failed to properly pay any amount due under any other federal, state or local law,

statute, ordinance, executive order, regulation, constitution or common law relating to payment of wages or other compensation for employment, including but not limited to laws of the State of New York, or otherwise violated any such law, statute, ordinance, executive order, regulation, or constitution; and;

3.3.1.3.   All claims that any of the Released Parties failed to provide any benefit pursuant to the terms of any employee benefit plan maintained, administered, sponsored, funded, and/or paid, in whole or in part, by AIM, violated the terms of any such employee benefit plan, breached any fiduciary obligation with respect to any such plan, or discriminated against any Plaintiff for the purpose of preventing her from obtaining benefits pursuant to the terms of any such plan, or in any way violated any provision of the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 et seq.; and

3.3.1.4.   All claims that any of the Released Parties discriminated against, harassed or retaliated against Plaintiff on the basis of age, race, color, national origin, ancestry, sex, gender, religion, disability, handicap, sexual orientation, marital status, parental status, source of income, protected conduct such as objecting to or refusing to participate in violations of laws prohibiting discrimination or harassment, including but not limited to claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; the Equal Pay Act, 29 U.S.C. § 206(d); the Lilly Ledbetter Fair Pay Act of 2009; New York State Human Rights Law; New York City Human Rights Law; and all other federal state and local laws, statutes, ordinances, executive orders, regulations, or constitutions that prohibit discrimination, harassment or retaliation in employment, all as they may have been amended from time-to-time; and

3.3.1.5.   All claims under the Family and Medical Leave Act; claims under the False Claims Act; claims under the National Labor Relations Act; claims under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); claims under the Employee Retirement and Income Security Act ("ERISA"); claims under the Occupational Safety and Health Act ("OSHA"); claims under the Sarbanes Oxley Act; the Dodd-Frank Act, workers' compensation claims; claims under analogous state laws; other whistleblower claims; qui tam claims or actions; and

3.3.1.6.   All claims arising under any other federal, state or local law, statute, ordinance, executive order, regulation, or constitution; and

3.3.1.7.   All claims for breach of any contract, employment agreement, compensation agreement, agreement for payment of bonus, agreement for grant or sale of stock or stock options, ownership agreement, long term incentive plan or agreement, or other agreement; promissory estoppel claims; claims of negligent or intentional misrepresentation; fraud claims; claims alleging unfair or deceptive trade practices; claims of negligent hiring, retention or supervision; claims for violation of public policy; claims for constructive discharge; assault claims; battery claims; claims for invasion of privacy; defamation claims; claims for injury to reputation; claims for damage to earning capacity; claims for loss of employment prospects; emotional distress claims; personal injury claims; intentional infliction of emotional distress claims; negligent infliction of emotional distress claims; other negligence claims; tort claims; any and all other common law claims; claims under any group health, dental or vision insurance plan, disability insurance plan, life insurance plan, 401(k) plan, other retirement plan, savings plan, profit sharing plan or other employee benefit plan; and

3.3.1.8.   All claims arising out of any Plaintiff's employment with AIM or any of the other Released Parties, and all claims arising out of the termination of said employment; and

3.3.1.9.   To the extent not covered above, all claims that were pled or could have been pled against the Released Parties in the Lawsuit; and

3.3.1.10.  All claims for any type of damages or relief whatsoever, including, but not limited to, all claims for legal relief, all claims for equitable relief, and all claims for: back pay; front pay; salary; overtime compensation; tips; bonuses; incentive pay; other wages; commissions; other compensation; other money damages; reinstatement; continuation of insurance coverage; benefits under any employee benefit plan; medical or income benefits or payments; relocation expenses; any other fringe benefits; injunctive relief; equitable relief; declaratory relief; liquidated damages; compensatory damages; damages for emotional distress; exemplary damages; consequential damages; punitive damages; attorneys' fees; costs; expenses; expert witness fees; interest; penalties; and any and all other claims for relief or damages; and

      **3.3.1.11.**   All other claims of any nature whatsoever.

3.4.   Excepted from the Released Claims is any claim or right that cannot be waived by law, including Plaintiff's right to file a charge with an administrative agency, and their right to participate in any agency investigation.   Plaintiff is waiving, however, her right to any monetary recovery should the U.S. Department of Labor, or any other federal, state or local agency (or any other person or entity), pursue any of the Released Claims on her behalf.   Plaintiff is also waiving any right to recover money in connection with a lawsuit, charge or other claim filed by any other person or entity including any city, local, state, or federal agency regarding any of the Released Claims.

3.5.   Plaintiff represents and warrants that she has not assigned or transferred, or purported to assign or transfer, to any person or entity any of the Released Claims, and that she will not do so in the future.   Plaintiff agrees to indemnify and hold the Released Parties harmless from and against any and all Claims suffered or incurred by any of them based on, arising out of, or in connection with any such assignment, transfer, or purported assignment or transfer.

3.6.   The Parties agree that there is a bona fide dispute concerning the facts alleged by Plaintiff and concerning Plaintiff's entitlement to the amounts claimed by Plaintiff.   Those disputes include, among others, whether Plaintiff was properly classified as "exempt" employees under the FLSA, the number of compensable hours worked by Plaintiff, and the proper method for calculating back wages. Plaintiff understands that AIM is agreeing to pay her money even though it might not be required to do so if the Lawsuit proceeded to trial, and that she is accepting a payment that may be less than she might recover if the Lawsuit proceeded to trial.

3.7.   Plaintiff acknowledges that the consideration provided by AIM in this Agreement is good and sufficient consideration for the general release described in this Section 3, and for the other promises Plaintiff makes in this Agreement.

3.8.   Plaintiff acknowledges and agrees that the waiver and release of claims in this Section 3 is an essential and material term of this Agreement without which the Parties could not have reached a settlement.   Plaintiff affirms that she understand and acknowledge the significance and consequences of Section 3.

4.   **COVENANT NOT TO SUE.**

4.1.   A "covenant not to sue" is a legal term that means a party promises not to assert a legal claim against another, including a promise not to file a lawsuit against another in court.   It is different from the waiver and release of claims contained in Section 3.

4.2.   In exchange for the consideration described in Section 2 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Plaintiff further agrees never to institute any lawsuit, complaint,

proceeding, grievance, or action of any kind at law, in equity, or otherwise in any court of the United States, any state, or any municipality, or in any other forum, against any of the Released Parties for any of the Released Claims. Plaintiff also agrees that she will not join, participate in, or consent to opt into any claim asserting that she is similarly situated to any of the Released Parties' current or former employees or contractors, and that she will elect to opt out of any lawsuit or other action against any of the Released Parties in which they are included in a class certified by court order or otherwise involuntarily made a member or participant.

4.3.   If Plaintiff violates Subsection 4.2 by filing, joining, participating, opting into or failing to opt out of any lawsuit or other action against any of the Released Parties for any Released Claims, Plaintiff shall be liable to any and all Released Parties that are party to the lawsuit or action for such Released Parties' reasonable attorneys' fees and other costs incurred in defending against the lawsuit or action.

4.4.   Plaintiff further agrees that she will not appeal the dismissal of the Lawsuit, or file any additional claims, charges, administrative proceedings, lawsuits or other actions against AIM or the other Released Parties based upon any events occurring prior to the execution of this Agreement, whether alleged in the Lawsuit or not.

4.5.   Plaintiff shall promptly request withdrawal of any lawsuit, demand for arbitration, administrative complaint or charge, and any and all other claims presently active or pending before any federal, state or local court, administrative agency, or other tribunal, (including but not limited to the Department of Labor, the Equal Employment Opportunity Commission, and any other federal, state or local government agency) which has been filed by her, or on her behalf, against AIM or any of the other Released Parties.

4.6.   Nothing in Section 4.3 shall apply to prohibit Plaintiff suing to enforce the terms of this Agreement.

4.7.   Nothing in Section 4.3 precludes or restricts the Released Parties, collectively or separately, from seeking any and all damages, injunctive relief, and/or other remedies against Plaintiff for any violation of this Agreement.

4.8.   Plaintiff acknowledges and agrees that the Covenant Not to Sue in this Section 4 is an essential and material term of this Agreement without which the Parties could not have reached a settlement. Plaintiff affirms that she understands and acknowledges the significance and consequence of Section 4.

5.   **CONFIDENTIALITY AND NON-DISPARAGEMENT.**

5.1.   For purposes of this Agreement, "Confidential Information" means: (a) the terms of this Agreement or any facts related to this Agreement or to the negotiations that led to this Agreement; (b) the amount of the payment made by AIM pursuant to this Agreement or the amount of any component of that payment; (c) the factual

basis for any claims in the Lawsuit; or (d) any documents or information obtained in connection with the Lawsuit, *or* in connection with Plaintiff's employment with AIM, *or* concerning the business of AIM. For purposes of this Section 5, "Plaintiff's Counsel" means: (a) Treyvus & Konoski, PC.; (b) each of its attorneys and employees (both during and after their association with Treyvus & Konoski); and (c) all other persons and entities to whom Travis & Konoski or any of its attorneys or employees has disclosed Confidential Information.

5.2.   Except as provided in Subsection 5.10 of this Agreement, Plaintiff and Plaintiff's Counsel agree that neither she nor it, nor anyone on her or its behalf will, in any manner, directly or indirectly: (a) use any Confidential Information; or (b) disclose, provide, transmit, divulge, reveal, quote, describe, paraphrase, summarize, discuss, publicize, publish, or in any other manner communicate any Confidential Information to or with any person or entity, including without limitation, any past, present or prospective employee, agent, representative or customer of the Released Parties, any past, present or prospective client of Plaintiff's Counsel, or any representative of the media. Except for the narrow circumstances described in Subsection 5.10, Plaintiff and Plaintiff's Counsel agree that in response to any inquiries regarding Confidential Information, she or it will simply state that the matter has been resolved and will make no other comment.

5.3.   In the event of a breach of Section 5 of this Agreement by a Plaintiff or by Plaintiff's Counsel (including any breach attributable to her or it), the Released Parties shall have the right to institute legal action seeking damages and injunctive relief in a court of competent jurisdiction. Further, if the Released Parties establish any such breach, the person or entity who committed the breach shall be liable for the attorneys' fees and costs incurred by the Released Parties in any such action, regardless of whether damages or injunctive relief are obtained.

5.4.   Section 5 of this Agreement shall be liberally construed to effect its purpose of assuring maximum permissible confidentiality of this Agreement, which shall be deemed to be of the essence of this Agreement.

5.5.   The Parties agree specifically to be bound by the terms of this Section 5 regardless of any subsequent determination by any court or other administrative body that this Agreement or any portion thereof may be disclosed.

5.6.   The Parties affirm that this confidentiality provision is a material provision of this Agreement, and that any breach thereof constitutes a material breach of this Agreement for which AIM will be damaged in a manner and amount that cannot easily be calculated.

5.7.   Plaintiff and Plaintiff's Counsel hereby agree and represent that at no time prior to the date of his, her or its execution of this Agreement has she or it, or anyone on her or its behalf, in any manner, published, disclosed or discussed any Confidential Information, to or with: (a) any newspaper, magazine, television

station, radio station, cable company, blog, chat room, or any other entity associated with the print, digital or electronic media, known or unknown; (b) any publisher, columnist, reporter, writer or any other person employed by any of the foregoing institutions; or (c) any other person, including authors or writers, for which he, she or it received or will receive any compensation, monetary or otherwise, or where the purpose of such communication was to produce a book, article, story or other vehicle of communication through any of the foregoing print or electronic media.

5.8.   Each Plaintiff and Plaintiff's Counsel further agree and represent that at no time prior to the date of her or its execution of this Agreement has she or it, or anyone on her or its behalf, in any manner, published to, disclosed to or discussed with, any person or entity whatsoever, excepting only communications between or among Plaintiff and Treyvus & Konoski, PC, the fact that the Parties were negotiating a possible settlement of her claims, or any aspect of the negotiations that led to this Agreement.

5.9.   *However*, nothing in this Section 5 shall be construed to impose any unlawful restraint.

5.10.  Notwithstanding any other provision of this Section 5, Plaintiff may disclose Confidential Information:  (a) to the extent reasonably necessary with respect to completing her tax returns to account for the monies paid pursuant to this Agreement;  (b) in response to an Internal Revenue Service audit or other governmental inquiry; (c) to her own legal or tax advisors; (d) as required by law; and (e) to her spouse, parents, and siblings.  Plaintiff agrees, however, that any subsequent use or disclosure of Confidential Information by any person to whom she has made disclosure pursuant to Subsections 5.10(a), 5.10(c) or 5.10(e) shall be attributable to her, and she will be liable for said subsequent disclosure to the same extent that she would be liable had she made the disclosure herself. Notwithstanding any other provision of this Section 5, Plaintiff's Counsel may disclose Confidential Information:  (a) to the extent reasonably necessary with respect to completing its tax returns to account for the monies paid pursuant to this Agreement; (b) in response to an Internal Revenue Service audit or other governmental inquiry; (c) to its own legal or tax advisors; (d) as required by law; and (e) to the extent necessary in litigation brought against it relating to the Lawsuit.  Plaintiff's Counsel agrees, however, that any use or disclosure of Confidential Information by any other person or entity, to which Plaintiff's Counsel or any of its attorneys or employees has disclosed Confidential Information, shall be attributable to Treyvus & Konoski, PC.

5.11.  If Plaintiff or Plaintiff's Counsel is subpoenaed or otherwise required by process of law to disclose any Confidential Information, she or it must provide AIM with notice of the subpoena or other court process within three calendar (3) calendar days of his receipt of the subpoena or notice of process, by delivering notice by e-mail or facsimile transmission to AIM's counsel:  Roshni Chaudhari, E-mail: rchaudhari@fordharrison.com, Fax: 212-453-5959.  Such notice shall include, at a

minimum: (a) an explanation that the Plaintiff or Plaintiff's Counsel is being required by process of law to disclose information prohibited from disclosure by this Agreement; (b) identification of the date, court, and proceeding in which the Plaintiff or Plaintiff's Counsel is being required to disclose such information; and (c) a copy of the subpoena or other documentation of such service of process. Plaintiff or Plaintiff's Counsel subject to the subpoena or other process shall forego responding until the deadline for doing so, to allow AIM a full opportunity to object to the subpoena or other process.

5.12.   Plaintiff also shall not take any action or make any comments which might embarrass, disparage, harass or adversely affect the Released Parties or its or their business operations, practices or services.

5.13.   Plaintiff may direct employment reference inquiries to AIM's Chief Financial Officer, Joseph Rakauskas, at (562) 495-8845 and if Mr. Rakauskas is contacted by any prospective employer of a Plaintiff to provide information regarding that Plaintiff's employment with AIM, Mr. Rakauskas shall provide only a neutral reference consisting of Plaintiff's dates of employment, last position held, and final salary.

5.14.   Plaintiff acknowledges and agrees that any breach of this Section 5 is a material breach of this Agreement, and that, because the exact amount of potential damages to the Released Parties from such a breach is difficult to precisely ascertain, if any Plaintiff or Plaintiff's Counsel breaches this Section 5, then (a) the Released Parties may seek an injunction and/or judgment against such Plaintiff or Plaintiff's Counsel, and (b) such Plaintiff or Plaintiff's Counsel shall be liable for (i) the Released Parties' attorneys' fees and all other litigation costs incurred in bringing such a suit, as well as (ii) all damages suffered as a result of the breach or, alternatively, $500.00 (five hundred dollars) as liquidated damages.

5.15.   Nothing in this Section 5 precludes or restricts AIM from seeking any and all damages, injunctive relief, and/or other remedies against Plaintiff for violation of any section of the Agreement, or against Plaintiff's Counsel for violation of this Section 5.

6.   **EMPLOYMENT RELATIONSHIP.**

6.1.   Plaintiff agrees to never knowingly seek rehire or employment, either directly, through a temporary agency, or by any other method, with AIM, their parent companies, subsidiaries, or any of the other Released Parties.

6.2.   Plaintiff agrees that any breach of this Section 6 is sufficient and lawful cause for rejection of any application for employment, and for termination of her employment should she be inadvertently hired by one of the companies described in Subsection 6.1.

6.3.   Plaintiff agrees that the limitations in this Section 6 on her future employment and contractual rights are justified under the relevant facts and circumstances.

7.      **NON-ADMISSION OF LIABILITY.**

7.1.    The Parties have entered into this Agreement in order to avoid the substantial costs, risks, uncertainties and inconvenience of litigation. The Released Parties deny that they have acted wrongfully toward Plaintiff, and the execution of this Agreement does not constitute an admission by any of the Released Parties that they have violated any law, statute, rule, regulation or ordinance of the United States, any state, or any county or municipality, or that they have breached any of their policies or practices, or that Plaintiff's claims are meritorious.

7.2.    Nothing contained in this Agreement, nor any of the acts taken or foregone pursuant to this Agreement, shall be deemed or construed as an admission of liability or of violation of any applicable law, statute, ordinance, order, regulation, or constitution of any kind.

8.      **PROTECTION OF DOCUMENTS AND INFORMATION.**

8.1.    Plaintiffs and Plaintiff's Counsel agree not to use or disclose any documents or information relating to AIM or to the lawsuit, which they learned of or obtained prior to the Final Order of Dismissal of the lawsuit. Plaintiffs agree to make a good faith effort to locate all documents and files, hard copy or electronic, containing such information, and Plaintiff will either destroy or deliver to her counsel all such documents and files, without retaining any copies, electronic or otherwise. Within ten business days after she signs this Agreement, Plaintiff (through her counsel) will provide AIM's counsel with a written confirmation swearing and affirming under penalty of perjury that she has complied fully with Section 8 of this Agreement. Plaintiff's Counsel will maintain any information or documents provided to it by Plaintiff, and immediately after a period of four (4) years from the date of the Final Order of Dismissal in the litigation, Plaintiff's Counsel shall destroy the files. W-2s, paystubs and benefits documents (but not W-2s or paystubs relating to the settlement payment) are excluded from this Section 8.

9.      **OTHER AGREEMENTS BY PLAINTIFF.**

9.1.    Plaintiff acknowledges and agrees that:

9.1.1.  She has carefully read and understands this Agreement, and is entering into this Agreement knowingly, voluntarily, and with knowledge of its significance, and without coercion, threat, or intimidation to sign this Agreement;

9.1.2.  She has been given the opportunity to consult with counsel of her choice concerning this Agreement and has done so;

9.1.3.  She is not entitled to consideration from AIM and/or the other Released Parties other than as set forth in this Agreement;

9.1.4. She is waiving his or her right to participate in any class or collective action against AIM and/or the other Released Parties regarding any of the Released Claims;

9.1.5. Other than the Lawsuit, she has not filed, joined in, been a party to, or been a beneficiary of any other complaints, charges, claims or proceedings against AIM and/or the other Released Parties, excluding claims for workers' compensation or unemployment compensation; and

9.1.6. The settlement is contingent upon the full execution of this Agreement by Plaintiff and dismissal of the Lawsuit with prejudice. If either of these conditions is not met, then this Agreement will become void and invalid as to all Parties, AIM's obligation to pay the consideration described in Subsection 2.1 shall cease, and the Parties shall be returned as nearly as may be accomplished to the positions they were in before September 1, 2014.

9.2.  Plaintiff shall not voluntarily aid, abet, promote or encourage any other person, or anyone acting on behalf of such person, in pursuing any claim, judicial, administrative or otherwise, against any of the Released Parties. However, this Subsection 9.2 shall not be construed to impose any unlawful restraint.

10.   **ENTIRE AGREEMENT.**

10.1. The Parties agree that this Agreement sets forth the entire agreement between the Parties, and supersedes any other prior or contemporaneous written or oral statements, representations, communications, understandings, promises, or agreements between the Parties.

10.2. The Parties agree that no amendment or modification of this Agreement or the Acceptances shall be binding on the Parties unless reduced to writing and signed by all Parties.

11.   **CONSTRUCTION AND INTERPRETATION.**

11.1. Plaintiff shall not be considered a prevailing party for any purpose.

11.2. The Parties agree that this Agreement shall be interpreted and construed in accordance with the laws of the State of New York, without regard to conflicts of laws principles.

11.3. The Parties acknowledge and agree that the terms and conditions of this Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

11.4.   The Parties agree that the headings of the sections in this Agreement are intended for convenient reference only, and shall not in any way affect the meaning or interpretation of this Agreement.

11.5.   The waiver by any Party of a breach of any provision of this Agreement by any other Party shall not operate or be construed as a waiver of any subsequent breach of that or any other provision by said Party.

12.   **SEVERABILITY.**

12.1.   The Parties agree that if any phrase, clause, or provision of this Agreement, other than the Waiver and Release of Claims in Section 3 and the Covenant Not to Sue in Section 4, is held by a court of competent jurisdiction to be unenforceable for any reason, that phrase, clause, or provision shall be modified by the court to the extent necessary to make it enforceable and to approximate and effectuate, as closely as may be done, the intent of the Parties. If any such phrase, clause, or provision cannot be modified so as to be enforceable, it shall be severed from this Agreement. If a phrase, clause, or provision is modified or severed pursuant to this Subsection 12.1, the remainder of the Agreement shall remain in full force and effect.

12.2.   The Parties agree that if any waiver, release, or covenant-not-to-sue language in Sections 3 or 4 is found to be illegal, invalid, or unenforceable, in whole or in part, by a court of competent jurisdiction, then this Agreement shall be null and void, AIM's obligations under this Agreement shall be nullified, and Plaintiffs must return all monies paid by AIM under this Agreement.

The Parties agree that this Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

Plaintiff:

_Jane Saunders_
Signature of Jane Saunders

Date: 9/29/14

Social Security Number: XXX-XX- 530.33.3244

Date of Birth: 05 / XX / 1977

STATE OF _New York_

COUNTY OF _Richmond_

    **BEFORE ME,** the undersigned authority personally appeared **Jane Saunders,** by me known or who produced valid identification as described below, who executed the foregoing SETTLEMENT AND RELEASE AGREEMENT (the "Agreement"), and acknowledged before me that she subscribed to this Agreement on this _29_ day of _Sept_ , 2014.

NOTARY PUBLIC

JOSEPH A. BUTTAFUOCO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BU6236066
Qualified in Richmond County
My Commission Expires January 31, 2015

**Plaintiff's Counsel:**

Approved as to form and content, and agreed to as to Section 5:

Bryan Konoski, Esq.
Treyvus & Konoski, PC

**For Defendant:**

ALLIANCE INSPECTION MANAGEMENT, LLC

Title: _Chief Financial Officer_

Date: _10/8/14_

WSACTIVELLP:7057031.1